Richard J. SARGENT et al., Plaintiffs,

v.

GENESCO, INC., et al., Defendants.

No. 71–197 Civ. T–K.

United States District Court,
M. D. Florida,
Tampa Division.

July 8, 1977.

---

R. Alan Stotsenburg, Stotsenburg & Donohue, P.C., New York City, Charles F. Clark, Macfarlane, Ferguson, Allison & Kelly, Tampa, Fla., for plaintiffs.

Leonard W. Cooperman, St. Petersburg, Fla., John R. Newcomer, Jr., Yado, Keel, Nelson & Casper, A. Dallas Albritton, Jr., Albritton, Sessums & DiDio, Marvin E. Barkin, W. K. Zewadski, Trenam, Simmons, Kemker, Scharf & Barkin, David A. Maney, Gordon & Maney, Theodore C. Taub, Gibbons, Tucker, McEwen, Smith, Cofer & Taub, James W. Ault, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tampa Fla., Sanford M. Litvack, Donovan, Leisure, Newton & Irvine, New York City, William V. Gruman, David G. Hanlon, Shackleford, Farrior, Stallings & Evans, Daniel N. Burton, William T. Keen, Tampa, Fla., Jeffrey Allen Tew, Miami, Fla., Herbert E. Langford, Jr., Burton, Haworth, Langford & Turtzo, P.A., Clearwater, Fla., Don M. Stichter, Tampa, Fla., Oscar Blasingame, St. Petersburg, Fla., for defendants.

## ORDER

KRENTZMAN, District Judge.

### I. BACKGROUND [1]

This is an action for alleged securities fraud brought pursuant to various sections of the Securities Act of 1933 and the Securities Exchange Act of 1934. The named plaintiffs [2] are persons who purchased common stock of Leeds Shoes, Inc. between July 29, 1965 and December 12, 1967. Defendants are former officers and directors of Leeds Shoes, Inc., certain others who are alleged to have been controlling persons of Leeds Shoes, Inc., and several underwriting firms alleged to have been marketmakers for Leeds Common Stock. Defendant Leeds Shoes, Inc. is presently the subject of bankruptcy proceedings, and while this order will necessarily have an effect on that defendant, if it should reenter these proceedings, this action is of course stayed as to Leeds Shoes, Inc. at present.

Due in part to prior dismissals by the Court and to the passage of time, some of plaintiffs' original claims no longer remain viable. At present it appears that plaintiffs continue to assert only Counts 1 and 2 of their second amended complaint.

Briefly, in Count 1 plaintiffs assert individual and representative claims for alleged violations of antifraud provisions of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and of Rule 10b–5 of the Securities Exchange Commission. Plaintiffs allege that the officers and directors of Leeds Shoes, Inc. published untrue statements of material facts about Leeds in annual and semi-annual reports during 1966 and 1967. The same reports allegedly omitted material facts which would have revealed to an investor the deteriorating financial condition of Leeds. During this same period plaintiffs contend that the defendant underwriters caused the same misrepresentations and omissions to be reflected in prospectuses and other financial media distributed to plaintiffs.

The result of the alleged misrepresentation and omission was an artificially inflated market value in Leeds stock. Plaintiffs assert that their purchases were induced by defendants' omissions and misrepresentations and the resulting artificial markets. It is alleged that the plaintiffs, who subse-

---

1. For a detailed recitation of the facts in this action *see Sargent v. Genesco,* 352 F.Supp. 66 (M.D.Fla.1972), rev'd in part 492 F.2d 750 (5th Cir. 1974).

2. The nine named plaintiffs are: Richard J. Sargent; Verna M. Irons; Albert J. Paine; William E. Lawton, Jr.; Arthur T. Reynolds; Ralph M. Stotsenburg; Frank Corsie; H. Garrison Silleck; and Stanley B. Smullen, III.

quently sold their stock, did so at a loss, and those plaintiffs who have retained their stock, are holding their shares at a substantially reduced market value.

Subsequent to the events alleged in Count 1, trading in Leeds stock was suspended.[3] Thereafter, several of the defendants and the Prudential Insurance Company of America, the major creditor of Leeds, developed a refinancing plan to alleviate Leeds' financial crisis. On September 18, 1968 a letter was mailed to common shareholders of Leeds stock summarizing the plight of Leeds and the terms of the refinancing plan. The letter also suggested that full effectuation of the refinancing plan would increase the book value of Leeds common stock and avoid potential defaults on existing indebtedness. At the time the letter was distributed the annual Leeds shareholder's meeting was overdue and no such meeting was held until approximately one year later. Plaintiffs contend in Count 2 of their complaint that defendants caused the September 18, 1968 letter to be issued and that the letter was a solicitation to the common shareholders to obtain their consent and authorization to the refinancing plan in violation of § 14(a) of the Securities Exchange Act, 15 U.S.C. § 78n.

## II. CLASS ACTION

■ The Court presently has for consideration plaintiffs' motion for class certification. The class which the named plaintiffs propose to represent is that of "all persons who were holders of Leeds common stock on December 13, 1967, the day after suspension of trading in Leeds securities". In addition, plaintiffs seek to represent a subclass consisting of those persons holding Leeds common stock on December 13, 1967, who purchased the stock in the public marketplace between July 29, 1965 and December 12, 1967, when trading in the stock was suspended. Although the plaintiffs have made no distinction, it appears that the proposed subclass consists of those persons with claims under Count 1, and the larger primary class is composed of all persons

capable of asserting proxy solicitation claims in Count 2 of the second amended complaint. The basis for the distinction is obvious. Only those persons who purchased shares of Leeds common stock during the period of market manipulations, i. e., from July 29, 1965 to December 12, 1967 have standing to assert claims for fraudulent representations and omissions under § 10(b) and Rule 10b-5 in Count 1. Correspondingly, any person holding Leeds common stock on December 13, 1967, regardless of when the stock was purchased, is potentially a member of the class of persons who may assert a proxy solicitation claim under § 14(a) of the Securities Act in Count 1. However, it appears that the proper date for determination of class membership for Count 2 claims would be September 18, 1968, the date the alleged proxy solicitation letter was mailed.

■ Rule 23 of the Federal Rules of Civil Procedure sets forth the requirements which must be met for class certification. As the rule clearly states, plaintiffs must satisfy all of the requirements of Rule 23(a) and one of the provisions of Rule 23(b). The defendants have objected to class certification on basically all grounds.

### A. *Rule 23(a)*

Rule 23(a) provides in pertinent part:
(a) One or more members of a class may sue or be sued as representative parties on behalf of all only if  .  .  .
(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims of the representative parties are typical of the claims of the class;
(4) the representative parties will fairly and adequately protect the interests of the class.

### 1. *Numerosity*

A review of plaintiffs' second amended complaint, defendants' answers and the limited discovery taken thus far reveals that

---

**3.** Trading in Leeds stock was suspended on December 13, 1967.

plaintiffs have satisfied the numerosity requirements of Rule 23(a)(1). Although the exact number of potential members of the class and subclass is unknown, it is obvious that joinder of all class members would be impracticable.

### 2. *Commonality*

Plaintiffs have also satisfied the Rule 23(a)(2) requirement that there be questions of law or fact common to the class. There are clearly questions of law and fact common to all class members in this action. Whether these common questions predominate sufficiently to satisfy Rule 23(b)(3) is discussed below.

### 3. *Typicality*

Defendants contend that the named plaintiffs' claims are not typical of their class because the named plaintiffs are not members of the class they seek to represent. This objection is without substance. Each of the nine named plaintiffs purchased shares of Leeds stock between July 29, 1965 and December 12, 1967, and retained shares of the stock through September 18, 1968, the date of the alleged proxy solicitation. Therefore, each of the named plaintiffs is a member of the class or subclass sought to be represented, their claims are premised on the same theories and will survive or fall to the same defenses. Consequently, the Court finds that the nine named plaintiffs are asserting claims typical of the claims of members of the potential class.

### 4. *Adequacy of Representation*

Whether plaintiffs will fairly and adequately represent the interests of the class presents a difficult problem. In reality, the class will be represented by counsel for named plaintiffs and the Court has found plaintiffs counsel to be adequate and capable of fairly representing the class. However, the Court cannot ignore the fact that only five of the nine named plaintiffs have presented themselves for deposition. The remaining plaintiffs for one reason or another have not been deposed and therefore, their willingness and ability to act as nominal class representatives is questionable. Accordingly, the Court finds that the named plaintiffs who have submitted to deposition are capable of adequate representation of the class.[4] The remaining plaintiffs may request reassessment for their position at a later stage of this proceeding after they have demonstrated their willingness and ability to comply with reasonable discovery requests of defendants.

### B. *Rule 23(b)*

In addition to the requirements of Rule 23(a), plaintiffs must satisfy one of the provisions of Rule 23(b). Plaintiffs seek to proceed under Rule 23(b)(3). To *meet* the requirements of 23(b)(3) the named plaintiffs must demonstrate that common questions of law or fact predominate over questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

### 1. *Count 1: § 10 and Rule 10b-5 Claims*

Defendants have focused the primary thrust of their opposition to class certification on plaintiffs' attempt to assert representative claims under § 10 of the Securities Exchange Act and Rule 10b-5 (hereinafter referred to as 10b-5 claims). Defendants contend that common questions of law or fact do not predominate primarily because of two fundamental issues which will turn upon the individual circumstances of each plaintiff. First, it is asserted that to recover based upon a Rule 10b-5 claim, each plaintiff must demonstrate that he or she relied upon defendants' misrepresentations or omissions to his or her detriment. Secondly, defendants contend that individual statute of limitations problems will predominate over other common questions of law or fact.

---

4. The named plaintiffs who have submitted to depositions are the following: Sargent, Irons, Reynolds, Stotsenburg, and Silleck.

■ The standard to be applied in determining whether common questions predominate is set forth in *Republic National Bank of Dallas v. Denton and Anderson Co.,* 68 F.R.D. 208 (N.D.Tex.1975). As stated therein, the court must determine whether common or individual questions will be the object of most of the efforts of the litigants and the court, *id* at 215. Regardless of the Court's determination of the class action issue, this has not been and will not be an easy case to litigate. However, the province of the Court is to determine the most efficient and just means to adjudicate plaintiffs' claims.

### a) *Reliance*

Defendants adamantly contend that as an element of proof of their 10b-5 claims, each plaintiff must establish that he or she relied upon the misrepresentation and omissions of defendant and that consideration of question of individual reliance precludes a class action. In response plaintiffs simply assert that proof of individual reliance is no longer required under Rule 10b-5.

The extent to which reliance remains an element of a 10b-5 action is unclear. In *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972), the Supreme Court held that individual reliance need not be proven under a 10b-5 claim for fraudulent non-disclosure. Shortly after *Affiliated Ute,* a three judge panel for the Fifth Circuit Court of Appeals rendered a decision in *Simon v. Merrill Lynch, Pierce, Fenner and Smith, Inc.,* 482 F.2d 880 (5th Cir. 1973) interpreted *Affiliated Ute* to apply only to non-disclosure cases. The *Simon* court found that although *Affiliated Ute* abolished the need for individual reliance in non-disclosure cases, some modicum of individual reliance remained as an element of a 10b-5 claim for active misrepresentation.

The dichotomy between plaintiffs' and defendants' positions on this issue results partially from different characterizations of the nature of plaintiffs' claims. Plaintiffs contend that their complaint is not based upon active misrepresentation but upon non-disclosure and therefore, proof of individual reliance is nor required. Plaintiffs assert that defendants are guilty of one "big omission". The alleged "big omission" was defendants' failure to include in their prospectuses and their materials distributed to make a market for Leeds stock, an accurate statement of the depleted financial condition of Leeds. At the other extreme, defendants contend simply that plaintiffs are alleging claims based upon oral, active misrepresentations and individual reliance is a necessary element plaintiffs must prove.

■ Plaintiffs and defendants have oversimplified the nature of the claims asserted. Plaintiffs' 10b-5 claims are basically hybrid in nature, containing allegations of active misrepresentations and fraudulent nondisclosure. This circumstance is a consequence of the impersonal business methods employed in the securities investment industry. As a result, all actions for securities fraud do not fit neatly into categories of misrepresentation or nondisclosure. In such cases there are usually numerous misrepresentations and omissions to investors generally, and there is little actual face to face fraud. Traditional concepts of fraud are particularly ill-suited to this situation. Therefore, when confronted with this occurrence, the Court should not construe the remedies provided by the Securities Exchange Act technically and restrictively, but flexibly to effectuate its remedial purpose of achieving a high standard of integrity in the securities industry. Some courts confronted by this development have allowed the claims asserted to proceed under a theory often designated as "fraud on the market". *Blackie v. Barrack,* 524 F.2d 891 (9th Cir. 1975); *In re U. S. Financial Securities Litigation,* 64 F.R.D. 443 (S.D.Cal.1974); *Dorfman v. First Boston Corporation,* 62 F.R.D. 466 (E.D.Pa.1974); *Grad v. Memorex Corp.,* 61 F.R.D. 88 (N.D.Cal.1973). To prevail under this theory, plaintiffs must demonstrate that defendants' misrepresentations and omissions were a part of a common scheme to manipulate the value of stock and that the defendants' fraudulent

activities caused an artificial inflation of the market value. The plaintiff need not prove individual reliance upon the particular misrepresentations or omissions of defendants. Rather, the plaintiffs must prove that the facts misrepresented or omitted by defendants were material and affected the market value of the stock purchased. Once plaintiff has satisfied this burden, reliance is presumed and the burden shifts to the defendants to rebut that presumption. *Dorman v. First Boston Corporation, supra.* Consequently, under a "fraud on the market" theory questions of individual reliance are not sufficient reason to deny class action status.

Defendants contend that this Court is precluded from accepting a "fraud on the market" theory by *Simon v. Merrill Lynch, Pierce, Fenner and Smith, Inc. supra.* The named plaintiff in *Simon* alleged that the defendant underwriter and its agents through several written and oral representatives committed fraud by misstating the true financial condition of the Scientific Control Corporation, the issuer of the stock. The court found that the gravamen of named plaintiff's complaint was the oral misrepresentations by an agent of defendant, and that in such an action proof of individual reliance was required. This factor together with other individual issues inherent in the nature of oral misrepresentations precluded class actions.

The factual situation in *Simon* can be distinguished from the instant case. In *Simon* the substantive misrepresentations upon which the named plaintiff relied were oral. The named plaintiff was unable to support his contention that similar misrepresentations were made to other members of the proposed class. In addition, the plaintiff had access to significant "inside information" concerning Scientific Control Corporation (SCC) through his close personal relationship with that company's board chairman. In this case defendants correctly

point out that of the named plaintiffs who have submitted to deposition, four admit relying to a large extent on the oral recommendation of Leeds stock by broker Spangler, or his partner, Ross. The remaining named plaintiff, H. Garrison Silleck, purchased his stock on the oral recommendation of broker Dryer. However, the oral representations by the agents were simple and undetailed, and appeared to be mere reiteration of the misstated financial information contained in the annual and semi-annual reports and various prospectuses being distributed by defendants at the time [5] Leeds' earnings and growth potential were consistently lauded by the brokers. In addition, it does not appear that any of the named plaintiffs had access to inside information as did the plaintiff in *Simon.* Therefore, there does appear to have been a common course of misrepresentations which affected the market value of Leeds stock materially. Such was not the case in *Simon,* and therefore, *Simon* should not be controlling in this instance.

■ Since this opinion is not a decision on merits of plaintiffs' claims, the Court need not finally determine the acceptability of the "fraud on the market" theory. Although the Court is inclined to believe that such a theory is consistent with the remedial purpose of the Securities Act of 1933 and Rule 10b-5, the adoption of that theory at this point to justify class action treatment is unnecessary. As noted earlier, plaintiff has stated claims for both active misrepresentation and nondisclosure. Under *Affiliated Ute* it is clear that individual reliance does not present an obstacle to class certification of plaintiffs nondisclosure claims. In addition, upon consideration of the total circumstances of this case, the Court does not find that the mere existence of individual questions of reliance, if they do in fact arise, warrant a ruling that common questions of law or fact do not predominate.

5. *See Mascolo v. Merrill Lynch, Pierce, Fenner and Smith, Inc.,* 61 F.R.D. 481 (S.D.N.Y.1973). The *Mascolo* case involved essentially the same alleged fraudulent activities regarding SCC stock as the *Simon* case. The *Mascolo* court distinguished *Simon* on the ground that the oral representations relied upon were but a reiteration of a common scheme of written misrepresentations.

*Ramsey v. Arata,* 406 F.Supp. 435 (N.D.Tex. 1975).

### b) *Statute of Limitations*

█ Defendants also contend that individual statute of limitations problems preclude a class action. In *Sargent v. Genesco, Inc.,* 492 F.2d 750 (5th Cir. 1974) the Fifth Circuit Court of Appeals found that this Court should look to New York law for a determination of the statute of limitations to be applied in this action. Defendants contend that the New York borrowing statute should apply under *Sack v. Low,* 478 F.2d 360 (2d Cir. 1973) and that utilization of this method to resolve statute of limitations problems would present individual questions sufficient to preclude class action treatment. The determination of statute of limitations will necessarily involve the consideration of individual circumstances. However, the resolution of these issues should be relatively simple and the possible existence of these individual issues does not preclude class treatment. *Ramsey v. Arata, supra* at 441.

Accordingly, the Court finds that irrespective of the individual issues which may arise, the focus of the litigation of plaintiffs' 10b-5 claims is on the alleged common course of fraud committed by defendants. The majority of the Court's efforts will concern issues common to the class as a whole and therefore, a class action is the superior method for adjudication of plaintiffs' 10b-5 claims.

### 2. *Count 2: § 14(a)*

█ Although the bulk of defendants' opposition is addressed to Count 1 of the second amended complaint, defendants have also objected to the propriety of certifying the claims asserted in Count 2 under Rule 23(b)(3). Since all proxy solicitations under this count would arise out of the one letter allegedly issued by defendants on September 18, 1968, there are no individual problems concerning the document itself. In addition, the Supreme Court has held that individual reliance need not be proven in an action pursuant to § 14(a) of the Securities

Exchange Act. *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). Therefore, the Court finds that common questions to be addressed in the litigation of Count 2 of plaintiffs' second amended complaint are predominant and class action treatment is the superior method for a fair and efficient adjudication of plaintiffs' claims.

### C. *Solicitation*

Finally, defendants contend that plaintiffs should not be allowed to utilize the mechanism of class action because of plaintiffs' counsel's attempts to solicit potential class members. The Court has considered the activities of counsel and does not find sufficient cause to prohibit a class action on this ground. Accordingly, it is

ORDERED:

1. Plaintiffs' motion for class certification is hereby GRANTED to the extent set forth herein.

2. The class of plaintiffs represented under Count 1 shall consist of those persons holding Leeds common stock on December 13, 1967, who purchased the stock in the public marketplace between July 29, 1965 and December 12, 1967.

3. The class of plaintiffs under Count 2 shall consist of all persons who were holders of Leeds common stock on September 18, 1968.

4. The named plaintiffs authorized to represent each class are: Richard J. Sargent; Verna M. Irons; Arthur T. Reynolds; Ralph M. Stotsenburg; and H. Garrison Silleck.

5. Counsel for the plaintiffs shall submit to the Court and opposing counsel a proposed form of notice to the absent class members within forty-five (45) days of this date. The defendants shall have thirty (30) days to make objections to the proposed notice.

6. Since bankruptcy proceedings are pending involving defendant Leeds Shoes, Inc., this action is, of course, stayed as to that defendant, and counsel for Leeds is not required to comply with this order.

7. In order to facilitate and control the reopening of discovery in this action, plaintiffs are directed to resubmit their first set of interrogatories to defendants within fifteen (15) days. Defendants shall thereafter have twenty (20) days within which to answer or object to the interrogatories. Revised Rules of the United States District Court for the Middle District of Florida became effective July 1, 1977. Rule 3.03 thereof revises certain discovery procedures, and counsel are directed to obtain copies of the revised Rules from the Clerk of this Court and to comply therewith. If defendants do not comply with this order or their answers are unsatisfactory, the Court will expect plaintiffs to file an appropriate motion to compel discovery. Until this stage of discovery is completed, the parties shall not conduct any further discovery without prior leave of the Court.