**Walter L. POWERS, Jr., et al., Plaintiffs,**

**v.**

**The STUART–JAMES COMPANY, INC., et al., Defendants.**

**No. 88–32–CIV–T–17(A).**

United States District Court, M.D. Florida, Tampa Division.

Feb. 17, 1989.

Steven Schember, Dykema, Gossett, Spencer, Goodnow & Trigg, Sarasota, Fla., for Walter L. Powers, Jr., and Joycelyn H. Powers.

Donald T. Trinen, Christa D. Taylor, Denver, Colo., Philip J. Gouze, Philip J. Gouze, P.A., Fort Lauderdale, Fla., for Stuart–James Co., Inc. and Rex Alan Field.

### ORDER ON MOTION TO CERTIFY CLASS ACTION

KOVACHEVICH, District Judge.

This cause is before the Court on Plaintiffs' motion to certify class action, filed July 18, 1988; Defendants' brief opposing class certification, filed August 8, 1988; and Plaintiffs' reply to the opposition, filed September 1, 1988.

Complaint was filed in this cause in the Circuit Court of the Twelfth Judicial Circuit in and for Sarasota County, Florida. The cause was removed to this Court on January 12, 1988. Plaintiff's first amended complaint was filed January 29, 1988. The amended complaint presented class representation allegations, on behalf of a class consisting of all Florida residents or residents of other states who purchased securities in Florida from Defendants under specified conditions. The amended complaint contained the following counts: 1) violation of Chapter 517, Florida Statutes, 2) breach of fiduciary duty, 3) negligence and gross negligence, 4) common law fraud, 5) violation of Chapter 772, Florida Statutes, 6) violation of section 10(b) of the Securities Exchange Act of 1934 and Rule 10(b)(5), and 7) violation of section 12(2) of the Securities Act of 1933.

Plaintiffs have alleged the following to be the facts pertinent to the motion to certify class action:

1. Plaintiffs are Florida residents who opened a securities brokerage account in 1985 with Defendant Stuart–James Company, Inc. (SJC). The account was opened after having been "cold-called" by Defendant Rex Alan Field (Field), who was an account executive working at SJC's Tampa office.

2. SJC is a broker-dealer which has been doing business in Florida since 1983. SJC asserts it is a full service brokerage firm. The primary business of SJC consists of underwriting securities issued by relatively small, relatively new companies, making the market for such securities, and then through "cold-call", high pressure sales tactics, peddling the securities (mostly penny-stocks) to the investing public.

3. This action involves an allegedly fraudulent scheme whereby SJC routinely sold these securities to Plaintiffs and numerous other customers in Florida at artificially inflated and excessively marked up prices while earning huge profits for the company.

4. To implement the allegedly fraudulent scheme, SJC trains its brokers to "cold-call" prospective customers in order to "pitch" them on the potential profits that allegedly can be earned by investing in the penny stocks owned or controlled by the company.

5. If the customer agrees to open an account with SJC, the broker will then recommend investing at the initial offering price in one or more new issue penny-stocks underwritten by SJC. Within a short time after making these initial new issue purchases, the customer is told by the broker that the stock has run its course and that the customer should take his profits.

6. At the same time the broker is urging the first customer to sell, he is urging another customer to buy the stock on the secondary market at a price which is much higher than the price at which the first customer sold the stock.

7. SJC receives commissions on both customer transactions and pockets the "spread" or "markup" between what the first customer sold the stock for and what the second customer paid for the stock on the secondary market.

8. The first customer is initially treated by SJC to some success on these new issues. The success is short-lived and is a "come-on." Soon the customer, flushed with initial success, willingly follows the broker's recommendations to buy the pennystocks in the secondary market while unknowingly paying excessive and fraudulent markups for the purchases.

9. SJC is able to perpetrate this fraudulent scheme because there is no market for these penny-stocks outside of the one created by SJC and the stocks are not listed on any current market quotation system available to SJC customers.

10. Plaintiffs bring this action on behalf of all SJC customers in Florida who were victims of this fraudulent scheme.

Defendants assert the following to be facts which are pertinent to the motion to certify class action:

11. Plaintiff Walter Powers is a sophisticated investor who, in February, 1985, opened an account with SJC and subse-

quently invested upwards of $100,000.00 in over thirty "penny" stocks over the next two and one-half years. Having lost money, Plaintiff is attempting to pass his losses on to Defendants by liberally sprinkling his complaint with conclusory statements about fraudulent marketing schemes.

12. SEC Rule 15c2–11 requires that every issue have at least two market-makers. All thirty plus issues which Plaintiffs purchased were or are listed on the National Association of Securities Dealers Automated Quotation system (NASDAQ), to which brokers have access via computer hook-up. In addition, quotes appear daily in the *Wall Street Journal,* as well as many local newspapers.

13. Of the issues bought by Plaintiffs only two stocks, U.S. Electronics Group, Inc. and Adcor Electronics, Inc., were taken off the NASDAQ system, because of financial difficulties. These stocks' value could be ascertained from "pink sheets", the colloquial name for the National Daily Quotation sheet published by the National Quotation Bureau to which brokers/dealers subscribe. The "pink sheets" list OTC stock prices, as well as identify the market-makers of a particular stock. Any broker/dealer can look up information and pass it on to callers.

Plaintiffs bring this action pursuant to Rule 23, Fed.R.Civ.P. and seeks to have this cause certified as a class action. Rule 23 provides that:

(a) One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

## I. Rule 23(a)

### A. *Numerosity*

Plaintiffs estimate that the proposed class includes at least 500 persons who purchased the securities of Micro–Energy, U.S. Electronics Group, Adcor Electronics, Microphonics Technology, UMB Equities, and Converse Technology between 1983 and January, 1988, the time of the filing of the first amended complaint, from The Stuart–James Company. The proposed class includes both residents and non-residents of Florida. Plaintiffs allege that the class also includes purchasers of securities

in other companies, but has not yet identified the other companies for the Court. Plaintiffs further allege that the actual number of persons in the class cannot be determined at the present time due to Defendants' refusal to respond to discovery on this issue, and that Defendants have stipulated to the issue of numerosity. The Court has examined Defendants' response to the discovery, as set forth in Plaintiff's reply to Defendants' opposition, and agrees that Defendants have stipulated to this issue. The Court will resolve any doubt on this issue in favor of granting class certification. *Eisenberg v. Gagnon*, 766 F.2d 770 (3rd Cir.), *cert. denied*, 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985). If later discovery shows that the class members number substantially less than 500, the Court will entertain a motion for decertification. In order to develop a manageable plan for this case, the Court proposes to later certify a sub-class of purchasers of each named security. At the present time, there is insufficient information available to develop a comprehensive plan.

### B. *Commonality*

In Count VI, for violation of Section 10-b and Rule 10-b-5, Plaintiffs allege that Defendants carried out a market manipulation scheme through material misrepresentations and omissions, and the class relied on the integrity of the market which was distorted by their impact. In Count VII, for violation of Section 12(2) of the Securities Act of 1933, Plaintiff alleges that Defendants intentionally misrepresented the true values of securities purchased and sold, and omitted to advise the class that the prices were artificially inflated and were part of a fraudulent scheme, that Defendants were actively and substantially involved as sellers, that the misrepresentations and omissions were made with the knowledge of their falsity, and the class relied on the integrity of the market which was distorted by their impact.

Many courts have held that where a common scheme of deception has been alleged, a common question exists. See, *Green v. Wolf Corporation*, 406 F.2d 291, 298 (2nd Cir.1968); *Esplin v. Hirschi*, 402 F.2d 94 (10th Cir.1968); *Harris v. Palm Springs Alpine Estates*, 329 F.2d 909 (9th Cir.1964).

Any attempt to establish the true value of the securities in question and the amount these securities were artificially inflated will require proof of the misrepresentations and omissions that helped establish the market price. These issues are common questions of fact for each purchaser within the class period. The existence and scope of the alleged conspiracy among the defendants is another question common to the entire class. The legal standards to be applied under Rule 10-b-5, whether the misrepresentations and nondisclosures were material, which defendants are responsible, and whether the defendants intended to deceive, manipulate or defraud are other common issues. A single common question is sufficient to satisfy Rule 23(a)(2), and the Court finds that the requirement has been met.

Damages is an individual issue. This issue is present in every securities fraud case, and should not be a bar to a class action. *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir.1975). This case involves both nondisclosure as well as active misrepresentations. Individual reliance need not be shown in a 10-b-5 case, since the reliance factor is established objectively by a showing of materiality. *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153-54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972).

Although Defendants may show nonreliance for each class member, and individual issues involving the statute of limitations may arise, these individual issues do not outweigh the substantial common questions concerning the existence of a conspiracy, the appropriate legal standards, and the factual background during the class period. *Simon v. Westinghouse Electric Corporation*, 73 F.R.D. 480 (E.D.Pa.1977). The Court finds that the commonality requirement is met.

### C. *Typicality*

Typicality exists when the legal or factual positions of the class representatives are sufficiently similar to the legal or factual

positions of the other class members. *Eisenberg v. Gagnon,* 766 F.2d 770 (3rd Cir. 1985).

Plaintiffs argue that Defendants have conceded the issue of typicality by not pleading any defenses suggesting that the claims of Powers are not typical of the claims of other class members. Defendants respond that the burden is on Plaintiffs to establish typicality, and that Plaintiffs have not done so. Plaintiffs respond that sufficient facts have been pled to satisfy the requirement of typicality, and therefore a rebuttable presumption in favor of class certification has been created.

The focus of this requirement is on the legal and factual stance of the class representative as compared with that of the class members. The reasoning behind this requirement is that where all interests are sufficiently parallel, all interests will enjoy vigorous and full presentation. *Scott v. University of Delaware,* 601 F.2d 76 (3rd Cir.1979). The only factual and legal allegations available to the Court are contained in the pleadings. Plaintiffs allege that this is a fraud on the market case; individual questions of reliance do not arise in this situation. Defendants have not rebutted the presumption that Plaintiffs relied on factors other than the market. The Court finds that the typicality requirement has been met.

### D. *Fair and Adequate Representation*

Adequate representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class.

The testimony of a class plaintiff that they are willing and able to pursue the litigation can satisfy the adequacy requirement. *Mellon Bank Shareholder Litigation,* 120 F.R.D. 35, Fed.Sec.L.Rep. (CCH), # 93,729 (W.D.P.A.1988). In the *Mellon Bank* litigation, plaintiffs testified that they understood the nature of the action and were willing and able to bear the expense of the litigation.

In this case, Plaintiffs have requested that Defendants bear the expense of notice to proposed class. However, in the absence of some special circumstances, the cost of identifying the members of the class and sending notice falls on the plaintiff because it is he who seeks to maintain the suit as a class action. *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978). Plaintiffs allege that they intend to prosecute this action vigorously and that they will fairly and adequately protect the interests of the class. The Court seeks assurance that once the class action is commenced, resources will be available so that it can proceed in an orderly way. At present, there are no specific allegations that Plaintiffs understand the potential costs of the litigation or are able to bear that expense, or that counsel has agreed to advance costs which Plaintiffs have agreed to reimburse. The Court seeks further clarification of this issue.

Defendants have not claimed that Plaintiffs have interests antagonistic to the other class members. Defendants argue that since the class members are at present unidentified, the Court has no basis on which to find that Plaintiffs are adequate representatives. Although not every company in which the alleged class members purchased securities has been named, and the identify of the class members is as yet unknown, Plaintiffs have sufficiently shown that they are adequate representatives of at least some proposed sub-classes as to Counts VI and VII. If discovery shows some great variance in interest between the named plaintiffs and other members of the class, due to facts at present unavailable to the Court, there are a number of procedural devices available to effect a remedy, such as subclassification, bifurcation and reconsideration of class certification.

Defendants have argued that counsel has demonstrated incompetence by failing to plead necessary elements for different causes of action, and have cited incorrect statutes and acts. The Court disagrees with Defendants' evaluation. While the pleadings are not a miracle of technical

perfection, Plaintiffs' pleadings do show familiarity with securities litigation and vigorous advocacy. The Court finds that Plaintiffs' counsel has demonstrated competence.

## II. Rule 23(b)(3)

### A. *Predominance*

Predominance requires that common questions of law or fact pertaining to the class predominate over individual questions. The Court finds that the common questions in this case predominate over individual issues.

Defendants have argued that because of the various fraud claims, individual questions of reliance predominate, and that as to the negligence claims, individual proof of causation is required.

The core of this case is the alleged scheme carried on by Defendants to manipulate the value of securities in various companies resulting in the artificial inflation of market value. Plaintiffs need not prove individual reliance upon particular representations or omissions of Defendants. Once Plaintiffs have proved that the representations or omissions were material and affected the market value of the stock purchased, reliance is presumed and the burden shifts to Defendants to rebut that presumption. Under a "fraud on the market" theory, questions of individual reliance are not sufficient reason to deny class action status. *Sargent v. Genesco*, 75 F.R.D. 79 (M.D.Fla.1977). As to Counts VI and VII, the predominance requirement has been met.

### B. *Superiority*

The Court believes that the vehicle of a class action is superior to other available methods for the fair and efficient adjudication of Counts VI and VII of this case. The Court is not aware of any other related litigation which is presently pending in other Courts. The concentration of this litigation in one place will prevent other dockets from being clogged with multiple cases. It appears to the Court that the judicial system, the potential class members, the litigants, counsel for the parties, and the public will all benefit from class certification because the time and money of all parties will be efficiently used.

Defendants argue that the relevant records are all contained in another city, but in litigation someone is always inconvenienced by the burdens of discovery. If the expense of transporting the records becomes unduly burdensome, Defendants can file appropriate motions. Accordingly, it is

ORDERED that Plaintiffs shall file a response to the Court's inquiry as to their understanding of the potential costs of this litigation, and their ability and willingness to pay those costs within ten days of the date of this Order. Defendants shall file any desired reply within five days thereafter. It is further

ORDERED that all necessary discovery to identify all companies whose securities were part of the alleged fraudulent scheme shall be completed within forty-five days from the date of this Order, and Plaintiffs shall then advise the Court of the names of those companies. The Court will defer ruling on the motion for certification of class action until that time.

DONE and ORDERED.