**DURA–BILT CORPORATION, Plaintiff,**

v.

**CHASE MANHATTAN CORP. et al., Defendants.**

**Alfred FELDMAN, as Executor of the Estate of Joseph Feldman, Plaintiff,**

v.

**CHASE MANHATTAN BANK, N. A. et al., Defendants.**

**Regina GETZOW, as Executrix of the Estate of Albert G. Newton, Plaintiff,**

v.

**ALLEGHANY CORPORATION et al., Defendants.**

**Nos. 70 Civ. 4666, 71 Civ. 1963, 71 Civ. 3800 (DNE).**

United States District Court, S. D. New York.

Jan. 22, 1981.

Nemser & Nemser, New York City, Lead Counsel for plaintiffs and Dura-Bilt Corp.

Wolf, Popper, Ross, Wolf & Jones, New York City, for plaintiff Dura-Bilt Corp.

Lowey, Dannenberg & Knapp, P. C., New York City, for plaintiffs George Starkman and Jean Starkman—to be dismissed as plaintiffs.

Berger & Montague, P. C., Philadelphia, Pa., for plaintiff Albert G. Newton.

Wolf, Haldenstein, Adler, Freeman & Herz, New York City, for plaintiff Joseph Feldman.

Firm of Abraham L. Bienstock, New York City, for defendant Pershing & Co.

Cahill, Gordon & Reindel, New York City, for defendant Loeb, Rhoades & Co., Inc., E. F. Hutton & Co., Inc., Chase Fund of Boston, Inc.

Cleary, Gottlieb, Steen & Hamilton, New York City, for defendant Salomon Bros.

Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for defendants Shields & Co., Mitchum, Jones & Templeton, Inc.

Dilworth, Paxson, Kalish, Levy & Kauffman, Philadelphia, Pa., for defendant H. S. Equities, Inc.

Donovan, Leisure, Newton & Irvine, New York City, for defendants Investors Diversified Services, Investors Mut., Inc.; and Alleghany Corp.

Hawkins, Delafield & Wood, New York City, White & Williams, Philadelphia, Pa., for defendant Butcher & Sherrerd.

Locke, Locke & Rudman, Beverly Hills, Cal., J. Kenneth Thompson, New York City, for defendant William O'Neil & Co., Inc.

Milbank, Tweed, Hadley & McCloy, New York City, for defendants The Chase Manhattan Bank, N. A., Chase Manhattan Corp.

Olwine, Connelly, Chase, O'Donnell & Weyher, New York City, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for defendant Drexel Firestone, Inc., and its successors Lexerd & Co. Inc., and Lexerd (Delaware), Inc.

Simpson, Thacher & Bartlett, New York City, for defendant Lehman Bros. Kuhn Loeb.

Sullivan & Cromwell, New York City, for defendant Goldman, Sachs & Co.

Sullivan & Cromwell, New York City, for defendant The First Boston Corp.

Weil, Gotshal & Manges, New York City, for defendant DuPont Glore Forgan Staats, Inc.

## OPINION AND ORDER

EDELSTEIN, District Judge:

*Factual Background*

This action is one of many spawned by the bankruptcy of the Penn Central Railroad. Plaintiffs in this action have moved this court for class certification of the above captioned actions pursuant to Rule 23, Federal Rules of Civil Procedure, and for consolidation of these actions for all purposes pursuant to Rule 42(a), Fed.R. Civ.P.

Plaintiffs here allege that defendants have violated § 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder, by selling Penn Central Company common stock while in the possession of material inside information relating to the business, finances, and operations of Penn Central, and that such information was not adequately disseminated to plaintiffs. In addition, plaintiffs allege that defendants acted in concert in the timing of their sales of Penn Central stock. The class sought to be certified is:

> [t]he plaintiffs and all persons, firms, or other entities, similarly situated, who purchased shares of common stock of Penn Central Company at any time during the period during April 27, 1970, and June 8, 1970, inclusive. Excluded from the class are the defendants and all per-

sons who were during the said period directors, officers, and/or partners of any of said defendants or members of their immediate families.

Before turning to the factual background of plaintiffs' motion, a distinction should be noted among the three companies involved in this action. Pennsylvania Company [Pennco] was the wholly owned investment company subsidiary of Penn Central Transportation Company [PCTC], which in turn was the wholly owned railroad subsidiary of Penn Central Company [PC], a holding company.

In February, 1970, an underwriters group[1] was formed for a proposed $100 million public offering of Pennco debentures. A March 26, 1970, *Wall Street Journal* article, reporting that Penn Central had applied to the I.C.C.[2] for authority to issue the debentures, was apparently the first announcement of the offering to the public.

On April 22, Penn Central issued a press release, announcing that PCTC had a net loss of $62.7 million in the first quarter of 1970. The first quarter financial statements were attached to this press release. An April 23 *Wall Street Journal* article reported that PCTC had a $62.7 million first quarter net loss, but did not print the financial statements which were attached to the press release.

The first preliminary offering circular for the debenture offer, dated April 27, 1970, included a statement concerning PCTC's first quarter loss. Although the bottom line as to the $62.7 million net loss was identical in both the press release and the preliminary circular, the order of presenta-

tion was different.[3] The April 27 circular was distributed to members of the underwriting group and to certain dealers and institutions, and to others upon request. It is unclear, however, how many, if any, of these circulars reached the public. On April 29, the *Wall Street Journal* once again reported on the offering, noting that "[t]he debentures won't, as originally announced, carry warrants to buy stock .... Penn Central said the warrant provision was dropped via an amendment to the authorization request for the debentures filed earlier with the Interstate Commerce Commission."

The revision of the April 27 preliminary offering circular, dated May 12, reflected altered terms. It also contained information relating to the decline in value of PCTC holdings, and stated that Penn Central commercial paper was being redeemed faster than it was being sold. This revised circular was distributed to the members of the underwriting group, members of the National Association of Securities Dealers, certain institutions, and to others upon request. Again, it is unclear how many, if any, of the revised circulars reached the public.

On May 15, on or about the time the revised preliminary circular was disseminated, the *Wall Street Journal* reported that Standard and Poors had reduced the rating of the proposed Pennco debentures from BBB to BB. The article noted that according to the Standard and Poors bond guide, "a triple-B security 'is borderline between definitely sound obligations and those where the speculative element begins to predominate,'" while "the lower double-B

---

1. This group was managed by defendants First Boston Corporation, Glore Forgan, Wm. R. Staats, Inc., and Salomon Brothers and Hutzler, and included defendants Goldman, Sachs & Co., Lehman Brothers Inc, Butcher & Sherrerd, Drexel Firestone Inc., E. F. Hutton & Co., Inc., Hayden Stone, Inc., and Loeb Rhoades & Co.

2. As a controlled subsidiary of a railroad, Pennco came under the jurisdiction of the Interstate Commerce Commission. 49 U.S.C. § 20a. As a result, what would have been termed a "prospectus" for purposes of the Securities Act of 1933 was called a "circular."

3. Plaintiffs allege that this presentation in the press release "camouflouged and 'played down' the railway operating losses of PCTC." Plaintiffs further allege that the underwriters were informed of and revised the contents of the press release before it was issued, and that although they required further disclosure in the offering circular, nevertheless did not require a change in the presentation of the first quarter 1970 results in the press release.

securities 'have only minor investment characteristics.' " The article attributed the lowered rating to the current condition of the parent company's operations, the sizable increase in the company's outstanding long-term debt, and the liquidity of various Pennco assets, particularly holdings in Great Southwest Corp., which alone had decreased $92 million in value in just over three weeks.

On May 27, the *Wall Street Journal* published an article noting that the revised circular disclosed a deficiency in the roll-over of PCTC's commercial paper.

During the week of May 18–22, a decision was reached that the debenture offering would not be successful. On May 21 and 22, Penn Central officials met with the managing underwriters and agreed to abandon their selling efforts. At the same time, they advised representatives of their lending banks they were withdrawing the proposed offering and seeking a government guaranteed loan instead.

On May 28, Penn Central officials met with loan officers of banks doing business with Penn Central and advised them that the Pennco offering was not going forward. Penn Central issued a press release that same day, announcing that it was postponing the Pennco debenture offering and working on alternative financing. This announcement was carried over the Dow Jones Broad Tape that afternoon, and the *Wall Street Journal* carried the news the next day.

On June 8, several high ranking Penn Central officials resigned at a special meeting of the PCTC board of directors. This news appeared in a June 9 *Wall Street Journal* article which brought together the information the *Journal* had previously published at various times regarding the PCTC losses, the difficulty of PCTC in rolling over its commercial paper, and the withdrawal of the $100 million debenture offering. On June 21 PCTC filed a petition for reorganization under section 77 of the bankruptcy act. 11 U.S.C. § 205 (1970).

## Procedural Background

The complaint in *Newton v. Alleghany Corp., et al.*, originally filed in the Eastern District of Pennsylvania as *Robinson v. Penn Central, et al.*, alleged various class and derivative claims on behalf of persons who bought Penn Central stock during May, 1970. Counts V and VII of plaintiff's complaint, alleging that various brokerage houses, New York banks, and financial institutions traded in Penn Central stock on the basis of inside information, were transferred to the Southern District of New York in 1971, pursuant to 28 U.S.C. § 1404(a). *See* Order of July 7, 1971. Civil No. 70–2010 (E.D.Pa.).

Complaints asserting insider trading claims similar to those alleged in the *Newton* action were filed in the Southern District of New York in *Dura-Bilt Corp. v. Chase Manhattan Corp., et al., Starkman, et al. v. Chase Manhattan Corp., et al.*, and *Feldman v. Chase Manhattan Bank N. A., et al.* In May, 1971, the *Dura-Bilt* and *Starkman* actions were consolidated, and an amended complaint was filed. In 1971 and 1972, the various plaintiffs moved for class action determination. In February, 1973, Judge Lasker denied class certification without prejudice to renewal in the *Newton* action (at that time entitled *Robinson v. Penn Central Co.*). 58 F.R.D. 436 (S.D.N.Y. 1973). His denial of class certification was based upon a conclusion (1) that there were too many unresolved factual questions to permit a determination whether the class should be certified; (2) that individual questions of law predominated over questions common to the class; and (3) that the plaintiff was neither typical nor representative of the class.

Upon referral of the various actions from other judges, this court ordered the three actions consolidated for pretrial purposes, designated respective lead counsel for both plaintiffs and defendants, and ruled as follows on the motion for class certification in *Dura-Bilt Corp. v. Chase Manhattan Corp.*:

3. With respect to class action questions, the opinion of Hon. Morris E. Lasker in *Robinson v. Penn Central Co., et al.*,

CCH Fed.Sec.L.Rep., ¶ 93,772 (S.D.N.Y. Feb. 9, 1973), is adopted in principle. The questions will be considered and a final ruling will be made following the completion of appropriate pretrial discovery. Pretrial Order No. 1, May 18, 1973.

Plaintiffs have now moved this court for class certification. Defendants oppose class certification on four grounds: (1) individual questions of law or fact predominate over common questions; (2) plaintiffs do not meet the typicality requirement of Rule 23(a)(3); (3) named plaintiffs have not and will not fairly and adequately represent the interests of the class; and (4) these actions are unmanageable as a class action.[4]

## Rule 23 Requirements
### Common Questions of Law or Fact

■ Common questions among the class are the focus of two subsections of Rule 23. Rule 23(a)(2) requires that common questions of law and fact be present as a prerequisite to class certification, while Rule 23(b)(3) provides that for a class action to be maintained, those common questions must predominate over individual questions.

It is clear that Rule 23(a)(2) is satisfied here. Rule 23(a)(2) requires only that questions of law or fact be shared by the prospective class, although not all questions of law or fact raised need be common. 7 Wright & Miller, Federal Practice and Procedure, § 1763 at 603–604 (1972). Here, there are common questions as to the existence, materiality, and character of the alleged misrepresentations and omissions. Further, whether defendants had a duty to disclose and, if so, whether there was sufficient public dissemination of the alleged nondisclosed information such that it could not be found to be inside information also present common issues. *See, e. g., Korn v.*

*Franchard Corp.,* 456 F.2d 1206 (2d Cir. 1972); *Herm v. Stafford,* 461 F.Supp. 508 (D.Ky.1978); *Cohen v. Uniroyal, Inc.,* 77 F.R.D. 685 (E.D.Pa.1977). The existence and scope of the alleged conspiracy among the defendants is itself a question common to the class. *See, e. g., Simon v. Westinghouse Electric Corp.,* 73 F.R.D. 480, 483–84 (E.D.Pa.1977); *Brady v. Lac, Inc.,* 72 F.R.D. 22, 27 (S.D.N.Y.1977).

The major argument put forth by defendants is that common questions do not predominate under Rule 23(b)(3). In the various briefs submitted by defendants, they claim individual questions predominate because: (1) even if the circulars contained inside information, each class member has the burden of proving that the alleged inside information was material on the date of each sale; (2) each class member has the burden of showing that each defendant had to have acted on the alleged inside information at the time of each sale; (3) each class member must prove his own diligence in investigating Penn Central prior to his purchase; (4) each class member must show that he did not in fact know the allegedly inside information; (5) each plaintiff must show he relied on the alleged misrepresentations in the April 22 press release; and (6) each plaintiff must show causation.

■ Rule 23(b)(3) does not require that all questions of law or fact be common; it only requires that the common questions predominate over individual questions. Courts generally focus on the liability issue in deciding whether the predominance requirement is met, and if the liability issue is common to the class, common questions are held to predominate over individual questions. *See, e. g., Sargent v. Genesco Inc.,* 75 F.R.D. 79 (M.D.Fla.1977); *Brady v. Lac Inc.,* 72 F.R.D. 22 (S.D.N.Y.1976).[5] The rule

---

**4.** The court notes that Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Defendants have not argued this point, and it appears that such requirement is met.

**5.** As one commentator has stated:
By their nature class damage actions always invoke many individual causation and

damage issues, while at the same time they also frequently display common violation or liability controversies that may be resolved efficiently only on a classwide basis. This fact not only makes applying the predominance prerequisite problematical, but it allows defendant the opportunity to argue that they should escape accountability altogether.

requires predominance, not identity or unanimity of issues among class members.

Defendants first contend that plaintiffs' burden of showing materiality will present individual issues because during the class period the various press disclosures created a continuously changing factual mix of available information concerning Penn Central's failing fortunes. As a result of these continuing disclosures, the materiality of each distinct piece of information changed as the information available to the public changed. Defendants claim, for example, that "plaintiffs cannot seriously argue that the alleged inside information concerning the exact breakdown of Penn Central's first quarter losses was still material by the end of May, by which time the press had reported the drastic drop in the price of Penn Central stock and the postponement of the debenture offering." Brief of defendants Morgan Guaranty Trust Company of New York and J. P. Morgan & Co., Inc., at 24. (footnote omitted).

 The materiality of a statement is measured in terms of its market impact, and does not vary among similarly situated investors. *In re Equity Funding Corporation of America Securities Litigation*, M.D.L. Docket No. 142, at 16 (C.D.Cal., March 26, 1976); *see TSC Industries Inc. v. Northway, Inc.*, 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976); *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972); *Mills v. Electric Auto-Lite*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). As the Second Circuit has stated:

The concept of materiality focuses on the weightiness of the misstated or omitted fact in a reasonable investor's decision to buy or sell. We articulated the materiality standard in *List v. Fashion Park, Inc.*, 340 F.2d 457, 462 (2 Cir), *cert. denied*, 382 U.S. 811, 86 S.Ct. 23, 15 L.Ed.2d 60 (1965), to be "whether 'a reasonable man would attach importance [to the fact misrepresented] in determining his choice of action in the transaction in

question.'" The materiality test is concerned only with whether a prototype reasonable investor would have relied. *See Heit v. Weitzen*, 402 F.2d 909, 912–14 (2 Cir 1968), *cert. denied*, 395 U.S. 903, 89 S.Ct. 1740, 23 L.Ed.2d 217 (1969). Account must be taken of all the surrounding circumstances to determine whether the fact under consideration is of such significance that a reasonable investor would weigh it in his decision whether or not to invest. (citation omitted).

*Chris-Craft Industries, Inc. v. Piper Aircraft Corp.*, 480 F.2d 341, 362–63 (2d Cir.), *cert. denied*, 414 U.S. 910, 94 S.Ct. 231, 38 L.Ed.2d 148 (1973). (footnote omitted) Thus, the question is whether a reasonable investor, not the individual investor, would attach importance to the alleged misrepresentations and omissions in determining whether to purchase or sell Penn Central stock. Materiality is determined by an objective rather than a subjective standard. The question of materiality, rather than being an individual issue, is in fact a common issue.

 That the materiality of the various alleged misrepresentations and omissions may vary over time as the mix of available information changes is not relevant at this time. On this motion for class certification, an inquiry into the merits of the complaint to decide whether the alleged misrepresentations and omissions were material would be improper. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974). Should it be demonstrated during the course of this litigation that some of the alleged misrepresentations and omissions were not, in light of other information available at that time, material, the court, under the flexibility provided by Rule 23(c)(3), may alter or amend the class.

Defendants next contend that individual issues predominate because each of the twenty-one defendants must be shown actually to have relied on the inside information

in making its trading decisions. They point out that widely disparate selling patterns existed among them, and that their actions can only be explained on the basis of each defendant's individual analysis of the "investment value" of Penn Central stock.

Defendants' reliance on inside information, if not otherwise shown by the facts, may be inferred from a showing of defendants' possession of the information, its materiality, and the lack of adequate disclosure. *See In re Investors Management Co.,* [1969–70] CCH Fed.Sec.L.Rep. ¶ 77,832, at 83,940 (S.E.C.1970), *aff'd* [1970–71] CCH Fed.Sec.L.Rep. ¶ 78,163, at 80,522 & n.36 (S.E.C.1971); *cf. State Teacher's Retirement Board v. Fluor Corp.,* 80 F.R.D. 142, 144 (S.D.N.Y.1978). While defendants may introduce evidence to rebut this inference of use, which may raise individual questions, the questions of materiality and adequate dissemination remain questions common to the class. These common questions predominate over individual issues which may be raised by an individual defendant's rebuttal of the inference of use of the information in making its sales decisions.

Defendants further argue that each plaintiff must individually prove his diligence in investigating Penn Central prior to his stock purchase. Defendants rely on the Second Circuit's statement in *Hirsch v. du-Pont,* 553 F.2d 750, 763 (2d Cir. 1977), to support their argument.

The securities laws were not enacted to protect sophisticated businessmen from their own errors of judgment. Such investors must, if they wish to recover under federal law, investigate the information available to them with the care and prudence expected from people blessed with full access to information. We believe that the diligence of the appellants in this case fell far short of the mark.

The Second Circuit has recently retreated from this language, limiting the above quoted statement to facts similar to those addressed in *Hirsch.*[6] *Mallis v. Bankers Trust Co.,* 615 F.2d 68, 79 (2d Cir. 1980), *petition for cert. filed,* 48 U.S.L.W. 3724 (No. 79–1426 March 14, 1980). The court held that in light of *Ernst & Ernst v. Hochfelder,* 425 U.S. 183 (1976), which imposed a scienter requirement as an essential element of a Rule 10b–5 claim, "a plaintiff's burden is simply to negate recklessness when the defendant puts that in issue, not to establish due care."[7] 615 F.2d at 79. (footnote omitted). Further, that plaintiffs allege they lacked effective access to information about the fraud undermines the de-

---

**6.** The facts to which the Second Circuit found *Hirsch* addressed were "where the comptroller of a large New York stock brokerage firm contemplating merger with another had received an answer to a questionnaire from the latter revealing 'a possible massive capital deficiency' and failed to pursue the line of inquiry plainly suggested by this. This went far beyond negligence." *Mallis v. Bankers Trust Co.,* 615 F.2d at 79.

**7.** Courts which have addressed this question following *Hochfelder* have differed in their application of this doctrine. *Compare Dupuy v. Dupuy,* 551 F.2d 1005, 1014–20 (5th Cir.), *cert. denied,* 434 U.S. 911, 98 S.Ct. 312, 54 L.Ed.2d 197 (1977) (plaintiff may recover unless reckless in not investigating "in disregard of a risk known to him or so obvious that he must be taken to be aware of it, and so great as to make it highly probable that harm would follow"); *and Holmes v. Bateson,* 583 F.2d 542, 559 & n.21 (1st Cir. 1978) (same) *with Holdsworth v. Strong,* 545 F.2d 687, 693 (10th Cir. 1976), *cert. denied,* 430 U.S. 955, 97 S.Ct. 1600, 51 L.Ed.2d 805 (1977) (plaintiff's lack of due diligence no

bar to action after *Hochfelder* unless plaintiff's actions constituted "gross conduct . . . comparable to that of defendant") *and Sunstrand Corp. v. Sun Chemical Corp.,* 553 F.2d 1033, 1048 (7th Cir.), *cert. denied,* 434 U.S. 875, 98 S.Ct. 224, 54 L.Ed.2d 155 (1977) (same) *and Straug v. Vaisman and Co.,* 540 F.2d 591, 598 (3d Cir. 1976) (due diligence is an affirmative defense; plaintiff required only to act reasonably under all facts and circumstances) *and with Hirsch v. duPont,* 553 F.2d 750, 762–63 (2d Cir. 1977) (plaintiff must demonstrate due diligence in discovering material information) *and NBI Mortgage Investment Corp. v. Chemical Bank,* [1977–78] CCH Fed.Sec.L.Rep. ¶ 96,066 at 91,799 (same) *and with Mallis v. Bankers Trust Co.,* 615 F.2d 68, 79 (2d Cir. 1980), *petition for cert. filed,* 48 U.S.L.W. 3724 (No. 70–1426 March 14, 1980) ("plaintiff's burden is simply to negate recklessness when the defendants puts that in issue, not to establish due care"); *see also Dupuy v. Dupuy,* 434 U.S. 911, 98 S.Ct. 312, 54 L.Ed.2d 197 (1977) (White, J., dissenting from denial of certiorari).

fendants' position. *See Rochez Brothers Inc. v. Rhoades,* 491 F.2d 402, 409–10 (3d Cir. 1973) (plaintiff cannot fail in his duty of due care if he lacked any opportunity to detect the fraud); *Holmes v. Bateson,* 434 F.Supp. 1365, 1383 (D.R.I.1977), *aff'd,* 583 F.2d 542, 559 & n.21 (1st Cir. 1978). *Cf. Securities and Exchange Commission v. Texas Gulf Sulphur Co.,* 401 F.2d 833, 848 (2d Cir. 1968) (en banc), *cert. denied,* 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969).

■ Defendants argue that even if due diligence is an affirmative defense, proof will still vary among class members, making class certification improper. Plaintiffs' burden of proof will arise, however, only when defendants have introduced evidence that plaintiff acted recklessly. *Mallis, supra,* 615 F.2d at 79. This court will not speculate, in deciding this motion, whether defendants can maintain any affirmative defenses. Rule 23 was not intended to encourage such conjecture. *See Peil v. National Semiconductor Corp.,* 86 F.R.D. 357, 374 (E.D.Pa.1980); *Cohen v. Uniroyal, Inc.,* 77 F.R.D. 685, 695 (E.D.Pa.1977).

■ Defendants' fourth argument is that individual issues predominate because class members may have had different information due to the wide dissemination of the Pennco circulars and the various disclosures in the press. The cases relied on by defendant in making this argument are distinguishable: in those cases, class certification was denied because the class members had received various oral representations or a variety of written materials.[8] Here, plain-

tiffs' allegations are based primarily on the nondisclosure to the public of certain material facts, such as, for example, the nature of PCTC's first quarter losses and the inability of Penn Central to roll-over its commercial paper. *See Lewis v. Black,* [1976–77] CCH Fed.Sec.L.Rep. ¶ 95,738 (E.D.N.Y. 1976). That all plaintiffs may not have had the same information because of the various press disclosures and possible dissemination of the Pennco circulars does not preclude class certification. Where, as here, plaintiffs' allegations relate to a common course of conduct, namely defendants' sale of Penn Central stock during the applicable period, while in possession of material inside information and without disclosing such to the public, common issues predominate over any individual issues which may be raised by the varying amounts of information available. *See Esplin v. Hirschi,* 402 F.2d 94, 100 (10th Cir. 1968), *cert. denied,* 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969); *Friedlander v. City of New York,* 71 F.R.D. 546, 549 (S.D.N.Y.1976); *Seiffer v. Topsy's International, Inc.,* 64 F.R.D. 714, 719 (D.Kan.1974).[9]

The next argument made by defendants is that individual questions of plaintiffs' reliance preclude class certification. The seminal case discussing the issue of reliance is the Supreme Court decision in *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). There the Court held that where a Rule 10b–5 violation involves

---

**8.** *Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 482 F.2d 880 (5th Cir. 1973) (combination of written and oral misrepresentations); *In re Scientific Control Corp. Securities Litigation,* 71 F.R.D. 491 (S.D.N.Y.1976) (variety of written materials); *Morris v. Buchard,* 51 F.R.D. 530 (S.D.N.Y.1971) (oral misrepresentations); *Moscarrelli v. Stamm,* 288 F.Supp. 453 (S.D.N.Y.1968) (same).

**9.** That the class as currently defined does not exclude persons who actually did receive copies of the circular is an insufficient basis for finding that individual issues predominate. Likewise, the argument that there may be some plaintiffs who purchased on the basis of their brokers' recommendations and whose claims

are thus tainted by their brokers' failure to investigate, *see Hanly v. Securities and Exchange Commission,* 415 F.2d 589 (2d Cir. 1969), does not preclude class certification. In *Hanly,* the court stated

Brokers and salesmen are "under a duty to investigate, and their violation of that duty brings them within the term 'willful' in the Exchange Act." Thus, a salesman cannot deliberately ignore that which he has a duty to know and recklessly state facts about matters of which he is ignorant. He must analyze sales literature and must not blindly accept recommendations made therein.

415 F.2d at 595–96 (footnotes omitted).

*primarily* a failure to disclose, positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a *reasonable* investor might have considered them important in the making of this decision. *See Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 384; 90 S.Ct. 616, 621, 24 L.Ed.2d 593 (1970).... *This obligation to disclose and this withholding of a material fact establish the requisite element of causation "in fact."*

406 U.S. at 153–54, 92 S.Ct. at 1472 (emphasis added). Thus, to the extent that nondisclosure of information is involved, reliance will be presumed by finding that defendants had a duty to disclose and that the information allegedly undisclosed at the time of each plaintiff's purchase of Penn Central stock was material. The focus of this determination is not upon the individual class members, but on the existence of a duty to disclose, and the materiality of a limited number of allegedly undisclosed facts and the time of their public disclosure.

Defendants argue the reliance question raises individual issues although nondisclosure is alleged, because, for example, "those who purchased before May 27 might arguably be presumed to have relied on the alleged nondisclosure of the commercial paper situation, while those who purchased on or after May 27 certainly could not." Brief of Defendants Alleghany Corp., Investors Diversified Services, Inc., and Investors Mutual, Inc., at 30. At most, this may result in the need to divide the class into subclasses based upon both the date of plaintiff's purchase and the date the court finds there was adequate disclosure of the material information. It does not, however, preclude class certification.

■ Defendants attempt to distinguish *Affiliated Ute*, arguing that this is not solely a case of nondisclosure, because plaintiffs claim that the April 22 press release misrepresented PCTC's first quarter loss. However, "all misrepresentations are also nondisclosures, at least to the extent that there is a failure to disclose which facts in the representation are not true." *Little v. First California Co.*, 532 F.2d 1302, 1304 n.4 (9th Cir. 1976); *see Sullivan v. Chase Investment Services of Boston, Inc.*, 79 F.R.D. 246, 261 (N.D.Cal.1978) ("If a misrepresentation is material to a reasonable investor, a reasonable investor would rely on it, and the law presumes that investors are reasonable until proven otherwise.").[10] Thus, the alleged misrepresentation in the press release can be restated as an allegation of nondisclosure, because it failed to disclose the full extent of Penn Central's losses, information which defendants allegedly knew prior to its release. *See* note 3 *supra.* Accordingly, *Affiliated Ute*'s holding that positive proof of reliance is not a prerequisite to recovery applies.

■ Furthermore, courts have held that proof of individual reliance is unnecessary to establish a 10b–5 claim where misrepresentations are alleged in "open market" situations. *See Blackie v. Barrack*, 524 F.2d 891, 906 (9th Cir. 1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976); *Chris-Craft Industries, Inc. v. Piper Air-*

---

10. Further, plaintiffs in most cases cannot denominate their allegations as strictly misrepresentations or omissions; both are usually involved in the alleged scheme to defraud. *See Sargent v. Genesco, Inc.*, 75 F.R.D. 79, 84–85 (M.D.Fla.1977). In *Genesco*, the court stated:

plaintiffs and defendants have oversimplified the nature of the claims asserted. Plaintiffs' 10b–5 claims are basically hybrid in nature, containing allegations of active misrepresentations and fraudulent nondisclosure. This circumstance is a consequence of the impersonal business methods employed in the securities investment industry. As a result, all actions for securities fraud do not fit neatly into categories of misrepresentation or nondisclosure. In such cases there are usually numerous misrepresentations and omissions to investors generally, and there is little actual face to face fraud. Traditional concepts of fraud are particularly ill-suited to this situation. Therefore, when confronted with this occurrence, the Court should not construe the remedies provided by the Securities Exchange Act technically and restrictively, but flexibly to effectuate its remedial purpose of achieving a high standard of integrity in the securities industry.

*Id.* at 84–85.

*craft Corp.*, 480 F.2d 341, 373–74 (2d Cir.), *cert. denied*, 414 U.S. 910, 94 S.Ct. 231, 38 L.Ed.2d 148 (1973); *Tucker v. Arthur Andersen & Co.*, 67 F.R.D. 468, 480 (S.D.N.Y. 1975). As the court stated in *Blackie*:

> Proof of reliance is adduced to demonstrate the causal connection between the defendant's wrongdoing and the plaintiff's loss. We think causation is adequately established in the impersonal stock exchange context by proof of purchase and of the materiality of misrepresentations, without direct proof of reliance.

*Blackie v. Barrack, supra*, 524 F.2d at 906. *See also Ross v. A. H. Robins Co.*, 607 F.2d 545, 553 (2d Cir. 1979), *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980); *Rifkin v. Crow*, 574 F.2d 256, 263 (5th Cir. 1978); *Kane Associates v. Clifford*, 80 F.R.D. 402, 406 (E.D.N.Y.1978).

> Therefore,
>
> given the broad remedial objectives of the securities acts, and the difficulties inherent in proving subjective reliance elements in any case, but especially in a class action involving thousands of stockholders, the Supreme Court and other courts have focused on the materiality aspect of the *alleged misstatement or omission*, and if material, then that determination itself is considered to embody the conclusion that the defect was of such a character that the shareholder relied on it.

5 Newberg, Class Actions, § 8824b at 881 (1977) (emphasis added).

Finally, to the extent that reliance may become an element of proof, there is no sound reason why this court cannot order separate hearings on that particular issue, as on the question of damages, if necessary. Thus, possible individual questions of reliance do not preclude class certification. *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d

Cir. 1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); *Helfand v. Cenco, Inc.*, 80 F.R.D. 1, 9 (N.D.Ill.1977); *Grad v. Memorex*, 61 F.R.D. 88, 97–98 (N.D. Cal.1973); *In re Penn Central Securities Litigation*, 347 F.Supp. 1327, 1344–45 (E.D. Pa.1972).

▉ Defendants' sixth argument that individual questions predominate is based on the claim that causation is a complex matter which may differ from plaintiff to plaintiff. Causation [11] is a relational concept—it compares the activity complained of with the effect it had on the party claiming injury. Courts have recognized that materiality is directly relevant to the issue of causation, because an immaterial omission or misrepresentation is insufficient to cause damages to others, nor may others reasonably rely on such matters to their detriment. *See Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). Thus, the "obligation to disclose and [the] withholding of a material fact establish the requisite element of causation in fact, *Affiliated Ute, supra*, 406 U.S. at 154, 92 S.Ct. 1472, thereby formalizing the causal connection between defendants' unlawful disclosure and plaintiffs trading injury." *Shapiro v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, [1975–76] CCH Fed. Sec.L.Rep. ¶ 95,377, at 98,883 (S.D.N.Y. 1975); *see also American General Insurance Co. v. Equitable General Corp.*, 493 F.Supp. 721, [Current] CCH Fed.Sec.L.Rep. ¶ 97,574, at 98,023 (E.D.Va.1980). Because the obligation to disclose and the materiality of the allegedly undisclosed information are issues common to the class, causation, rather than being an individual issue, is a common issue.

▉ The common issues need not be dispositive of the entire litigation. Rule 23(b)(3) only requires that common questions predominate, and the court finds this

---

11. Causation is not identical to reliance or materiality. Reliance is a question of whether the plaintiff believed the statement made, and is a part of causation. Materiality focuses on whether the plaintiff was justified in taking action. 5 Jacobs, The Impact of Rule 10b–5, § 64.02, at 3–213 (1978). Recent cases suggest that materiality supports causation in that a defendant would be hard pressed to establish that a plaintiff was indifferent to a material fraud. Therefore, causation and materiality are related since causation is often proved by showing materiality and a duty to disclose.

requirement to be met. To be sure, individual issues will likely arise in this as in all class action cases. But, to allow various secondary issues of plaintiffs' claim to preclude certification of a class would render the rule an impotent tool for private enforcement of the securities laws. In the present case, the individual questions which may arise present no difficulty not inherent in every securities class action. *See Kronenberg v. Hotel Governor Clinton, Inc.*, 41 F.R.D. 42, 45 (S.D.N.Y.1966).

*Typicality*

The typicality prerequisite overlaps with the common question requirement of Rule 23(a)(2) and the adequate representation requirement of Rule 23(a)(4). A plaintiff's claim meets the typicality requirement if it arises from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory.[12] By advancing their own interests, plaintiffs will advance the interest of the class. *See Green v. Wolf Corp.*, 406 F.2d 291, 299 (2d Cir. 1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); *Sargent v. Genesco, Inc.*, 75 F.R.D. 79, 83 (M.D.Fla. 1977).

Defendants argue that plaintiffs cannot meet the typicality requirement of Rule 23(a)(3) because the mix of available public information was constantly changing during the proposed class period. They claim each purchaser will seek to minimize the materiality of information published before his purchase and seek to maximize the materiality of information allegedly undisclosed before his purchase. Thus, class members who purchased early in the class period may have claims untypical of and even antagonistic to those class members who purchased later in the class period.

Defendants' argument construes too narrowly the typicality requirement. They suggest typicality cannot be satisfied by anything less than substantial identity between the plaintiffs' claims and those of absent class members. This is not true. Typicality refers to the nature of the claim of the class representatives, and not to the specific facts from which the claim arose or relief is sought. The proper inquiry is whether other members of the class have the same or similar injury, whether the action is based on conduct not special or unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct. *See Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830–31 (8th Cir.), *cert. denied*, 434 U.S. 856, 98 S.Ct. 177, 54 L.Ed.2d 128 (1977). Factual differences will not defeat class certification where the various claims arise from the same legal theory. *Donaldson v. Pillsbury Co., supra*, 554 F.2d at 830–31; *Bartelson v. Dean Witter & Co.*, 86 F.R.D. 657, 668 (E.D.Pa.1980). Thus, a difference in the amount of damages, date, size, or manner of purchase, the type of purchaser, and even the specific document influencing the purchase will not render the claim atypical in most securities actions. *See Oscar Gruss & Son v. Geon Industries Inc.*, 75 F.R.D. 531, 534–35 (S.D. N.Y.1977); *Clark v. Cameron-Brown Co.*, 72 F.R.D. 48, 52–54 (M.D.N.C.1976); *Epstein v. Weiss*, 13 F.R.Serv.2d 562, 567 (E.D.La. 1970). Plaintiffs here satisfy the typicality requirement by showing that the same allegedly unlawful conduct affected the named plaintiffs and the class members, notwithstanding the existence of some potential conflict of interest due to the differing purchase dates. *See Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976); *Green v. Wolf Corp.*, 406 F.2d 291, 299 (2d Cir. 1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); *Hochschuler v. G. D. Searle & Co.*, 82 F.R.D.

---

12. Defendants' argument that Rule 23(a)(3) typicality requires "co-extensive interests between the representative parties and members of the class" has not been generally adopted by the courts because it is too demanding a standard. 7 Wright & Miller, Federal Practice and Procedure, Civil § 1764, at 612–13 (1972); *see Vuyanich v. Republic National Bank of Dallas*, 78 F.R.D. 352, 356 (N.D.Tex.1978); *Ridgeway v. International Brotherhood of Electrical Workers, Local No. 134*, 74 F.R.D. 597, 604 (N.D.Ill.1977).

339, 344 (N.D.Ill.1978); *Byrnes v. IDS Realty Trust*, 70 F.R.D. 608, 611 (D.Minn.1976).

Defendants' argument assumes that a named plaintiff will not be motivated to prove fraud after the date of his purchase. However, the class representatives purchased Penn Central stock on a number of dates between May 5 and May 29. The complaint alleges a common course of conduct, namely, selling stock without disclosing material information, which began prior to the first purchase of the class representatives and continued until the last purchase. In such cases, the weight of authority holds that a plaintiff may represent subsequent purchasers. In alleging a common course of conduct, the plaintiffs will have a sufficient incentive to fully develop the facts which occurred after their own purchases of shares. *See Piel v. National Semiconductor Corp.*, 86 F.R.D. 357, 372 n.17 (E.D.Pa.1980); *Hochschuler v. G. D. Searle & Co., supra*, 82 F.R.D. at 347; *Lewis v. Capital Mortgage Investments*, 78 F.R.D. 295, 301–02 (D.Md. 1977); *Elkind v. Liggett & Meyers, Inc.*, 77 F.R.D. 708 (S.D.N.Y.); *Byrnes v. IDS Realty Trust, supra*, 70 F.R.D. at 611–12; *Aboudi v. Daroff*, 65 F.R.D. 388, 391–94 (S.D.N. Y.1974).[13]

That later events may be more important to later purchasers does not outweigh the overriding importance of the common course of conduct and the alleged failure to disclose material information. In proving their own claims, later purchasers will necessarily prove the case of earlier purchasers, thereby fairly and adequately representing all purchasers regardless of when their purchase was made. *In re Equity Funding Corporation of America Securities Litigation*, M.D.L. No. 142, at 11 (C.D.Cal. March 26, 1976); *see Siegel v. Realty Equities Corporation of New York*, 54 F.R.D. 420, 426 (S.D.N.Y.1972). As the court stated in *Markewich v. Adikes*, 76 F.R.D. 68 (E.D.N. Y.1977):

Of course, if an early misrepresentation is undissipated, a later purchaser will present a common question even if another misrepresentation has intervened. But even if the effect of the earlier misrepresentation is dissipated, proof of the earlier misrepresentation may be relevant to the latter purchaser's case. Proof of an earlier fraud and its effects may be relevant circumstantially to establish duty standards, culpability, or damages regarding the later fraud; it would establish background information about the defendant common to both suits.

*Id.* at 73; *see* 7 Wright & Miller, Federal Practice and Procedure, Civil § 1768, at 648–49 (1972). For this reason, courts have repeatedly certified classes where persons purchased at different times and pursuant to similar misrepresentations. *See Green v. Wolf Corp.*, 406 F.2d 291 (2d Cir. 1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); *Grad v. Memorex*, 61 F.R.D. 88 (N.D.Cal.1973); *Entin v. Barg*, 60 F.R.D. 108 (E.D.Pa.1973).

Furthermore, some courts have noted "that the glimmer of increased attorneys fees for the victorious plaintiff who represents a larger class is another incentive for the plaintiff to develop a full record of those events which occurred subsequent to his purchase." *Elkind v. Liggett & Meyers, Inc.*, 77 F.R.D. 708, 711 (S.D.N.Y.1977); *In re U. S. Financial Securities Litigation*, 69 F.R.D. 24, 38 (S.D.Cal.1975).

*Adequacy of Representation*

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Two basic guidelines have emerged: (1) the absence of a potential conflict between the named plaintiffs and the absent class mem-

13. The cases relied on by defendants are distinguishable and have been criticized. In *Reichert v. Bio-Medicus, Inc.*, 70 F.R.D. 71 (D.Minn. 1974), the court specifically noted that the representations made by the defendants to each plaintiff were neither similar nor made pursuant to a common scheme. "In sum, both of these cases involve different representations made by different individuals to different purchasers at different times and under different circumstances." *Id.* at 76. Reliance on *Elkind v. Liggett & Meyers, Inc.*, 66 F.R.D. 36 (S.D.N. Y.1975), is misplaced because class certification was subsequently granted. *See Elkind v. Liggett & Meyers, Inc.*, 77 F.R.D. 708, 712 (S.D. N.Y.1977).

bers and (2) that the party's attorney be qualified, experienced and generally able to conduct the proposed litigation.[14] *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 562 (2d Cir. 1968), *vacated and remanded on other grounds,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). The class representative need not be the best of all representatives, but one who will pursue a resolution of the controversy in the interests of the class. *See Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239, 247–48 (3d Cir. 1975); *Piel v. National Semiconductor Corp.,* 86 F.R.D. 357, 366 (E.D.Pa.1980). This requires a consideration of the nature of the litigation and the factual and legal bases underlying it. *See Apanewicz v. General Motors Corp.,* 80 F.R.D. 672, 27 F.R. Serv.2d 541, 546 (E.D.Pa.1978); 7 Wright & Miller, Federal Practice and Procedure, § 1765, at 622 (1972).

■ Defendants contend that named plaintiffs have not and will not fairly and adequately protect the interests of the class because: (1) plaintiffs have failed in their responsibility of vigorous prosecution; (2) plaintiffs have given their attorneys unfettered discretion to prosecute their actions; and (3) plaintiffs have conflicting interests with other members of the proposed class.[15]

Defendants argue that plaintiffs have failed in vigorously prosecuting this action by waiting over six years to renew their class action motions, and then only doing so after being prompted by this court's conference call in December 1978. Plaintiffs respond that the six year period was used for (1) "massive discovery"[16] in this case; (2) participation in the Philadelphia actions, where class action status was granted in 1973, and recovery from which would mitigate defendants damages in this action, *see In re Penn Central Securities Litigation,* 416 F.Supp. 907, 911–12, 921–25 (E.D.Pa. 1976); and (3) participation in the Penn Central Reorganization Proceedings. *See In the Matter of Penn Central Transportation Corp.,* 458 F.Supp. 1234, 1259, 1343 (E.D.Pa.1978).

■ There is no doubt delay is an element that bears on the adequacy of representation. To analyze the effect of the delay, the court must balance the possible prejudice resulting from this delay against counsels' demonstrated ability, experience and qualifications to conduct this litigation.

The general principle is that delay in seeking class certification should not, absent other compelling circumstances, result in denial of certification. *Sanders v. Faraday Laboratories, Inc.,* 82 F.R.D. 99, 102 (E.D.N.Y.1979); *Zolotnitzky v. Yablok,* 18 F.R.Serv.2d 986, 988–89 (S.D.N.Y.1974); *Gilinsky v. Columbia University in the City of New York,* 62 F.R.D. 178, 179 (S.D.N.Y. 1974); *Feder v. Harrington,* 52 F.R.D. 178, 181–82 (S.D.N.Y.1970). Delay only plays a decisive role if it results in prejudice to the class or the opposing party. *Feder, supra,* 52 F.R.D. at 182. Although defendants allege possible prejudice due to the fading of memories and unavailability of witnesses,

---

14. A commentator has noted that the adequacy of representation depends more on the integrity, skill and industry of plaintiff's counsel than on any personal qualities of the named plaintiff. Haudek, The Settlement and Dismissal of Stockholders' Actions—Part II: The Settlement, 23 Sw.L.J. 765, 766 (1969).

15. "It is in the nature of motion practice on class action determination issues that defendants, who naturally have no interest in the successful prosecution of the class suit against them, are called upon to interpose arguments in opposition to class determination motions verbally grounded upon a concern for the 'best' representation for the class, while the implicit, but nonetheless real objective of their vigorous legal assault is to insure 'no' representation for

the class." *Umbriac v. American Snacks, Inc.,* 388 F.Supp. 265, 275 (E.D.Pa.1975). *See Fox v. Prudent Resources Trust,* 69 F.R.D. 74, 79 (E.D. Pa.1975) ("[I]n class action suits it is always rather anomalous that defendants should concern themselves with the adequacy of plaintiff's representation of the class").

16. Defendants dispute plaintiffs' assertion of "massive discovery" efforts. Defendants claim that as far as they could determine, plaintiffs discovery "consisted of little more than the sporadic collection of documents produced by defendants following the denial of class status by this Court and the noticing and withdrawal of two depositions in 1975." Brief of Morgan Guaranty, at 43–44.

they have presented no evidence to support a finding of actual prejudice.[17] Further, defendants' failure to bring to the court's attention the plaintiffs' delay in seeking class certification is a factor this court considers relevant in light of the prejudice allegedly ·caused by this delay. *Finley v. Parvin/Dohrmann Co., Inc.*, 520 F.2d 386, 392 (2d Cir. 1975); *Securities & Exchange Commission v. Everest Management Corp.*, 466 F.Supp. 167, 171 (S.D.N.Y.1979).

Further, the interests of the proposed class are best served by plaintiffs' counsels continued representation. Their involvement in related Penn Central litigation has undoubtedly benefited the class as a whole. Moreover, plaintiffs' efforts with respect to this certification motion and a related summary judgment motion indicate a vital interest in pursuing this litigation·to a conclusion.

The court therefore finds plaintiffs to be adequate representatives of the class. In reaching this conclusion, the court has balanced the strong public policy in favor of deciding cases on the merits with the possi-

bility of prejudice to defendants as a result of the delay. *See Moore v. St. Louis Music Supply Co.*, 539 F.2d 1191, 1193 (8th Cir. 1976); *Reizakis v. Loy*, 490 F.2d 1132, 1135 (4th Cir. 1974). If defendants subsequently show they have been prejudiced by plaintiffs' delay in moving for class certification, the court may take appropriate action to ameliorate such prejudice.

■ The defendants argue that because named plaintiffs are "unfamiliar" with their claims, they have given their attorneys unfettered discretion. Although there are numerous conflicting decisions on this issue,[18] the reasoning in *Chevalier v. Baird Savings Association*, 72 F.R.D. 140 (E.D.Pa. 1976) is persuasive.

There is no doubt that the named plaintiffs have a very sketchy view of what this litigation is all about. We also do not doubt that counsel are proceeding in this case without significant restraints from the named plaintiffs. Nevertheless, we cannot agree that this thereby renders a class action inappropriate.

---

**17.** In their brief, defendants give a number of examples of persons employed by defendants who have died. However, there is no showing what role these persons played in the activities which are the basis of this action. Further, these individuals may have given testimony before either or both the S.E.C., in its investigation of the Penn Central collapse, and the House Committee on Banking and Currency in its investigation, or may have been deposed by various attorneys in preparing to litigate the multitude of suits engendered by the Penn Central bankruptcy. Defendants have made no showing that the testimony or depositions are unavailable to defendants for use at trial, or that testimony is otherwise not available.

**18.** *Compare Greenspan v. Brassler*, 78 F.R.D. 130, 133–34 (S.D.N.Y.1978) ("Although plaintiffs appear willing and able to bear the costs of this litigation, they have demonstrated an alarming unfamiliarity with the suit. They did not meet with their attorney until the basic groundwork of the action had been laid. Neither could identify any of the defendants other than JHB. Neither was aware of certain elements of the complaint. Indeed, plaintiffs appear to place undue emphasis on their counsel's ability to conduct the litigation. Plaintiffs' limited personal knowledge of the facts underlying this suit, as well as their apparently superfluous role in this litigation to date, indicate

their inadequacy as class representatives.") *and In re Goldchip Funding Co.*, 61 F.R.D. 592, 594–95 (M.D.Pa.1974) (plaintiffs not adequate class representatives because neither had much business experience, knowledge of the facts, or keen interest in the progress and outcome of the litigation; they were relying totally upon their attorneys) *with In re Bristol Bay, Alaska, Salmon Fishery Antitrust Litigation*, 78 F.R.D. 622, 627 (W.D.Wash.1978) ("The four named plaintiffs have a sufficient understanding of the reasons for which this case was instituted, and they are represented by able and experienced counsel who will adequately protect the interests of the class members. It is not necessary that named class representatives be knowledgeable, intelligent, or that they have a firm understanding of the legal or factual basis on which the case rests in order to maintain a class action.") *and Fischer v. International Tel. & Tel. Corp.*, 72 F.R.D. 170, 174 (E.D.N.Y.1976) (named plaintiff's lack of knowledge and interest in class action against corporation in which he owned stock did not preclude finding that he was an adequate class representative) *and Surowitz v. Hilton Hotel Corp.*, 383 U.S. 363, 371, 86 S.Ct. 845, 850, 15 L.Ed.2d 807 (1966) (in shareholders derivative action, lack of knowledge and interest in a case "cannot justify [a] court's summary dismissal" of a case).

First of all, it strikes us as at least partially unrealistic to expect the named plaintiffs to have any significant personal knowledge of the facts in a case like this, involving an antitrust conspiracy. This is something which, if it can be established, will only be done after a great deal of investigation and discovery by counsel against a background of legal knowledge. *See Bogosian v. Gulf Oil Corp.*, 337 F.Supp. 1234, 1235–36 (E.D.Pa.1972). To require the class representative to be sophisticated and knowledgeable enough to help counsel in this quest would reduce the class action device, especially in complicated antitrust cases, to an impotent tool. *Cf. La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 465–66 (9th Cir. 1973).

\* \* \* \* \* \*

The supposed unfettered discretion of counsel does not trouble us. Most lawyers, especially when representing unsophisticated litigants, have some degree of flexibility in their actions. Before counsel settle or dismiss this case, rule 23(e) requires our approval. Any fees to be paid counsel out of a monetary recovery would be awarded by the court, which has an obligation to protect the interests of the class members. *See In re Coordinated Pretrial Proceedings, Etc.*, 410 F.Supp. 680, 690 (D.Minn.1975). Further, if at any time we felt that counsel were not acting in the best interests of their clients, we would not hesitate to consider appropriate action pursuant to rule 23. *Id.* at 146–47. This reasoning applies equally well to securities actions. *Wolgin v. Magic Marker Corp.*, 82 F.R.D. 168, 175 (E.D.Pa.1979); *Simon v. Westinghouse Electric Corp.*, 73 F.R.D. 480, 485–86 (E.D. Pa.1977) ("... detailed knowledge on the part of non-lawyers of what acts might create liability under section 10b–5 cannot

be expected and is not required of a class representative.").[19]

*Superiority*

Defendants finally argue that this action will be unmanageable as a class action because it will be necessary to examine each individual sale by each defendant to determine whether the defendant possessed and relied upon undisclosed, material information in making the sale. This argument has already been rejected by the finding that common questions predominate. Once this court decides whether the information allegedly undisclosed or misrepresented was material, whether there was, on the part of defendants, a duty to disclose or to abstain from trading, *see Chiarella v. United States*, 445 U.S. 222, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980); *Securities & Exchange Commission v. Texas Gulf Sulphur*, 401 F.2d 833, 848 (2d Cir. 1968) (en banc), *cert. denied*, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969), and whether, if such duty existed, it was breached by defendants, any remaining issues will be minor by comparison. A Rule 23(b)(3) action clearly is superior where large numbers of persons,[20] who may be unaware of the existence of a cause of action, are involved and where most of their claims are too small to warrant individual suits. *See Clark v. Cameron-Brown Co.*, 72 F.R.D. 48, 59–60 (M.D.N.C.1976). Here, any problems of managing the class are not sufficiently great to outweigh the benefits of providing an opportunity for class members to have their day in court.

## CONCLUSION

For the above reasons, the court certifies the class as defined by plaintiffs and grants plaintiffs motion for consolidation for all purposes under Rule 42(a).

Counsel for plaintiff shall forward a draft of their proposed notice form to the

---

**19.** Defendants also argue that the conflicting interests between named plaintiffs and other class members which defeat the commonality and typicality requirements also negate the adequacy of representation requirement. The court finds this argument no more persuasive than when previously made.

**20.** Plaintiff states that there are approximately 15,000 purchasers in the class. Plaintiffs' Memorandum in Support of Motion for Reconsideration of Class Action Determination, and for Consolidation for all Purposes, at 14.

court and opposing counsel on or before February 14, 1981. Any objections to the proposed notice shall be filed on or before February 28, 1981.

So Ordered.